IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| OHIO FARMERS INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 3:07-1224<br>) JUDGE HAYNES |
| SPECIAL COATINGS, LLC, | )<br>) |
| Defendant, | )<br>) |
| and | )<br>) |
| MILLARD JOEL GODWIN and MARILYN K. GODWIN, | )<br>)<br>) |
| Defendants/Third Party Plaintiffs, | )<br>) |
| v. | )<br>) |
| WILLIAM CODY RUSSELL, WILLIAM C. RIDENOUR, WILLIAM MORRISON, and MORRISON & FUSON INSURANCE AGENCY, INC., | )<br>)<br>)<br>)<br>) |
| Third Party Defendants. | ) |

## MEMORANDUM

Plaintiff, Ohio Farmers Insurance Company ("Ohio Farmers"), filed this action under 28 U.S.C. § 1332, the federal diversity statute, against Defendants Millard Joel Godwin and Marilyn K. Godwin (collectively "the Godwins"), asserting claims under an indemnity agreement executed by Millard Godwin individually and as Chief Manager of Special Coatings, LLC ("Special Coatings"), and Marilyn Godwin individually as Millard's spouse. The Godwins responded with third party claims against Third Party Defendants William Morrison and Morrison & Fuson Insurance Agency, Inc. (collectively "Morrison"), William Cody Russell, and

1

William C. Ridenour. For their claims, the Godwins assert that Millard Godwin sold Special Coatings to his operations manager, William "Cody" Russell ("Russell"), and Russell's business partner, William C. Ridenour ("Ridenour"), before Ohio Farmers issued the payment and performance bonds on the Hopkinsville project.

## A. Review of the Record

Ohio Farmers issued a bid bond and payment and performance bonds on behalf of Special Coatings so that it could undertake a project to paint a one million gallon water tank for the Hopkinsville, Kentucky Water Environment Authority ("HWEA"). The project was not completed in accordance with bid specifications, and claims were made against the payment and performance bonds.

Ohio Farmers sought indemnity from Special Coatings and the Godwins, but the Godwins respond that they notified the independent insurance agent who handled the bonds of their transfer of ownership of Special Coatings and that the Godwins wanted nothing more to do with Special Coatings. Ohio Farmers contends the Godwins did not provide written notification of their termination of the indemnity agreement, as required by the agreement itself. Morrison argues that he did not owe the Godwins a legal duty to send a certified notice letter to Ohio Farmers to relieve the Godwins of their indemnity obligation.

In earlier proceedings, the Honorable Judge Echols struck the answers of Special Coatings and Russell and entered defaults against them after repeated failures to appear and to inform the Court of their whereabouts. In his Memorandum and Order (Docket Entry Nos. 103 & 104), Judge Echols also granted Morrison's motion to dismiss for failure to state a claim and granted Ohio Farmers' motion for summary judgment. After directing the parties to file briefs as to the issue of damages, Judge Echols awarded Ohio Farmers a judgment of $222,150.50 against

2

the Godwins, and prejudgment interest of $24,771.30 plus $60.81 per day beginning January 7, 2009, and ending on the date of entry of final judgment. (Docket Entry No. 127). Costs were later taxed against the Godwins in the amount of $5,568.18 for Ohio Farmers, and $7,449.92 in costs for Morrison. Finally, Judge Echols awarded attorneys' fees in the total amount of $81,252.20. After an appeal, the Sixth Circuit affirmed. (Docket Entry No. 154). The total amount awarded against Marilyn Godwin, exclusive of post-judgment interest, is $442,782.49, none of which has been satisfied. (Docket Entry No. 156, Plaintiff's Memorandum at p. 3).

Before the Court is Plaintiff's motion for writ of attachment (Docket Entry No. 155), contending, in sum, that after the judgment was entered, Defendant Marilyn Godwin obtained an annuity policy from Tennessee Farmers Life Insurance Company with a stated single premium payment of $180,632.63 (Docket Entry No. 156-5), and Plaintiff seeks a writ of attachment on the annuity policy. The stated provisions of the annuity policy allow Marilyn Godwin to withdraw its cash value for her own benefit, and Plaintiff argues that Marilyn Godwin's timing in obtaining the annuity policy suggests she obtained the annuity with the intent to avoid the judgment entered in this action.

Defendant Marilyn Godwin's response to Plaintiff's motion contends that Tennessee law prohibits the attachment of annuity contracts and that the annuity policy was purchased with the proceeds of Millard Godwin's life insurance policy that is exempt from creditor claims under Tennessee and Florida law. Plaintiff's reply argues that the Tennessee statutes cited by the Defendant are inapplicable to the attachment at issue here.

## B. Conclusions of Law

For the reasons set forth below, the Court concludes that the Tennessee and Florida statutes cited by Defendant Marilyn Godwin are inapplicable and Plaintiff's motion for a writ of attachment should be granted.

Rule 64 of the Federal Rules of Civil Procedure and Tenn. Code Ann. §§ 29-6-101, et seq. work in conjunction to provide for the issuance of a writ of attachment to be levied against the property of a judgment debtor. Rule 64 of the Federal Rules of Civil Procedure provides that attachment and other remedies relative to the seizure of property for the purpose of securing the satisfaction of a judgment shall be in accordance with the practice and procedure of the state in which the district court is held unless federal law dictates otherwise. Specifically, Rule 64 states as follows:

> (a) Remedies Under State Law – In General. At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.
>
> (b) Specific Kinds of Remedies. The remedies available under this rule include the following –however designated and regardless of whether state procedure requires an independent action:
>
> - arrest;
> - attachment;
> - garnishment;
> - replevin;
> - sequestration; and
> - other corresponding or equivalent remedies.

Fed. R. Civ. P. 64.

In addition, numerous federal courts have long held that substantial compliance with state practices and procedures is sufficient for federal proceedings in aid of enforcing the satisfaction of a judgment. See, e.g., Yazoo & M.V.R. Co. v. City of Clarksdale, 257 U.S. 10, 18-20 (1921);

Thomas, Head & Greisen Employees Trust v. Buster, 95 F.3d 1449, 1452-54 (9th Cir. 1996); Resolution Trust Corp. v. Ruggiero, 994 F. 2d 1221, 1226-27 (7th Cir. 1993); Arnold v. Blast Intermediate Unit 17, 843 F.2d 122, 124-25 (3rd Cir. 1988); Chambers v. Blickle Ford Sales, Inc., 313 F.2d 252, 255-56 (2d Cir. 1963).

Tenn. Code Ann. §§ 29-6-101 et seq. sets forth the grounds and procedures under Tennessee law for the issuance of a writ of attachment relative to the property of a judgment debtor. First, Tenn. Code Ann. § 29-6-101 provides:

> Grounds of attachment. – Any person having a debt or demand due at the commencement of an action, or a plaintiff after action for any cause has been brought, and either before or after judgment, may sue out an attachment at law or in equity, against the property of a debtor or defendant, in the following cases:
>
> (1) Where the debtor or defendant resides out of the state;
>
> * * *
>
> (6) Where the debtor or defendant has fraudulently disposed of, or is about fraudulently to dispose of, the property. . . .

Tenn. Code. Ann. § 29-6-101.

Prior to the attachment being granted, Tenn. Code Ann. § 29-6-115 requires that the judgment creditor execute a bond:

> Plaintiff's bond. – The officer to whom application is made, shall, before granting the attachment, require the plaintiff, the plaintiff's agent or attorney, to execute a bond with sufficient security, payable to the defendant, and conditioned that the plaintiff will prosecute the attachment with effect, or, in case of failure, pay the defendant all costs that may be adjudged against defendant, and, also, all such damages as the defendant may sustain by the wrongful suing out of the attachment.

Tenn. Code Ann. § 29-6-115.

In addition, Rule 69 of the Federal Rules of Civil Procedure provides that execution and other proceedings for the satisfaction of a judgment shall be in accordance with the practice and

procedure of the state in which the district court is held unless federal law provides otherwise. Fed. R. Civ. P. 69.

Finally, Tenn. Code Ann. §§ 26-4-101 et seq. defines the Court's authority under Tennessee law to subject the property of a judgment debtor to execution in satisfaction of a judgment. Specifically, Tenn. Code Ann. § 26-4-102 states:

> Powers of court to reach property. – The court has power to compel the discovery, and to prevent the transfer, payment, or delivery of the property, and to subject the same to the satisfaction of the judgment or decree, whether such property could, if in the defendant's possession or with the title vested in the defendant, be levied upon by execution or not.

In support of its motion, Plaintiff contends that grounds exist under Tennessee law for the attachment of the annuity policy because Marilyn Godwin, who resides in Jay, Florida, fraudulently disposed of property or is about to fraudulently dispose of property. Eight days after this Court entered the judgment, Marilyn Godwin obtained the annuity policy with a stated single premium payment of $180,632.63, and the provisions of the annuity policy expressly allow Marilyn Godwin to withdraw its cash value for her own benefit. (Docket Entry No. 156-5, Annuity Policy at p. 8). Plaintiff also contends that Marilyn Godwin's timing in obtaining the annuity policy suggests she obtained it with the intent to avoid the judgment debt. Plaintiff argues that the above facts support the granting of a writ of attachment on the annuity policy.

In response, Marilyn Godwin argues that Tenn. Code Ann. § 56-7-203 provides that annuities are not subject to attachment or garnishment by creditors, citing Overman v. Overman, 570 S.W.2d 857, 858 (Tenn. 1978). Marilyn Godwin specifically contends that Tenn. Code Ann. § 56-7-203 precludes attachment of annuities generally, and that her selection of a close family member, namely, her father, precludes attachment of this annuity policy. Finally, Marilyn Godwin argues that under Tennessee law, Plaintiff could not attach the proceeds of Millard

Godwin's life insurance policy, and therefore Marilyn Godwin's purchase of an annuity with those life insurance proceeds was appropriate. Brooks v. Brooks, 1994 WL 71528, at *2 (Tenn. Ct. App. 1994) ("[t]he proceeds of life insurance are not subject to claims of creditors"). Defendant Marilyn Godwin otherwise does not dispute any of the particulars regarding the annuity policy, the judgment debt, or her residence. Defendant Marilyn Godwin also does not contend that the beneficiary of the annuity policy, namely, her father, is a dependent relative.

First, the Court concludes that the Defendant's reliance on Overman is misplaced. In Overman, the Tennessee Supreme Court quashed garnishments against the issuers of annuities, not garnishments on the owner of the annuities themselves. There, the Tennessee Supreme Court noted that the annuities were properly considered "property in the possession of [the annuitant]. As a result, [the annuities] may not be reached by writs of garnishment directed at the [annuity issuers]." Overman, 570 S.W.2d at 858. Overman also states, "When the statute is applied to the circumstances presented in the instant case, it is apparent that the writs of garnishment **must be directed either at rights possessed by [the annuitant] or at obligations owed him by the [annuity issuers]**, arising from the annuity contracts and ostensibly in the possession of the [annuity issuers]." Id. (emphasis added). Here, Plaintiff seeks only to execute against the rights that Defendant Marilyn Godwin has in the annuity policy. These contract rights are property subject to execution to satisfy creditors, except to the extent that they are exempt under applicable law.

In addition, Defendant cites Overman and Lipman Brothers, Inc. v. Arete Agencies, Inc., 2005 WL 3333270 (Tenn. Ct. App. 2005), for the proposition that the annuity is not subject to garnishment because it is contingent on a future event. These decisions are distinguishable in that in Overman, there was not any evidence in that the annuities contained a

cash surrender option. Instead, the annuities contained a maturity date, at which time the value of same would be paid to Mr. Overman, and a death benefit payable to Mr. Overman's designated beneficiary should he die before the maturity date. As Mr. Overman was still alive and the maturity date had not passed at the time the writs of garnishment had issued, the Court held that the only obligation which the respondents owed to Mr. Overman was contingent on a future event. The annuity here contains a Cash Value and Withdrawal Benefit under which Mrs. Godwin may surrender the policy for the cash value of same. (Docket Entry No. 156-5, Annuity Policy at p. 8). The right to withdraw the cash value of the annuity is not contingent on the occurrence of some future event and may be exercised immediately by Marilyn Godwin. This is the specific property right of Mrs. Godwin that Plaintiff seeks to attach here.

In Lipman Brothers, a judgment creditor attempted to garnish a liability insurer of the debtor after the insurer had denied coverage for the claim under a policy exclusion. The Lipman Brothers court held that the insurer's obligation was contingent upon a finding that coverage existed under the policy and that no such finding had been made at the time the garnishments had issued. 2005 WL 3333270, at *4. Here, the right to surrender the policy for its cash value is not contingent on any future event and may be immediately exercised.

Defendant also cites Tenn. Code Ann. § 26-2-111(D) for the proposition that the annuity in question is exempt from execution. This argument fails for two reasons. First, the provision of that statute clearly applies only to annuities which act as either a substitute for earnings or which act as a deferral of earnings. In re Vickers, 408 B.R. 131, 138 (Bankr. E.D. Tenn. 2009) ("As evidenced by the plain and ordinary language used, the purpose of the statute is to allow Tennessee citizens to exempt a portion of payments received as a replacement for lost earnings, with its application limited to retirement-type benefits such as 'a stock bonus, pension,

profitsharing, annuity or similar plan or contract on account of death, age or length of service'").

Second, the last paragraph of Tenn. Code Ann. § 26-2-111(D) provides as follows:

> The assets of the fund or plan from which any such payments are made, or are to be made, are exempt only to the extent that the debtor has no right or option to receive them except as monthly or other periodic payments beginning at or after age fifty-eight (58). <u>Assets of such funds are not exempt if the debtor may, at the debtor's option, accelerate payment so as to receive payment in a lump sum or in periodic payments over a period of sixty (60) months or less.</u>

Tenn. Code Ann. § 26-2-111(D) (emphasis added). Here, the annuity policy provides that the payments may be made in one sum at Godwin's election. (Docket Entry No. 156-5, Annuity Policy at p. 7). The annuity policy may be surrendered for its cash value by Marilyn Godwin, who has not yet turned 58, as evidenced by the application for the annuity that she signed. (Docket Entry No. 156-4, Application at p. 2). Therefore, Court concludes that the annuity is not exempt under Tenn. Code Ann. § 26-2-111(D) from claims of Marilyn Godwin's creditors.

Finally, Marilyn Godwin's annuity policy is not exempt from attachment under Tenn. Code Ann. § 56-7-203, that provides as follows:

> The net amount payable under any policy of life insurance or under any annuity contract upon the life of any person **made for the benefit of, or assigned to, the spouse and/or children, or dependent relatives of the persons,** shall be exempt from all claims of the creditors of the person arising out of or based upon any obligation created after January 1, 1932, whether or not the right to change the named beneficiary is reserved by or permitted to that person.

(emphasis added). The annuity policy here was made for the benefit of Neal Jaco, Defendant's father. Defendant has not argued that Mr. Jaco is her dependent.

Defendant argues that <u>In re Billington</u> exempts annuities in favor of non-dependent relatives other than spouses or children, but that case does not support Defendant's contention. 376 B.R. 239 (Bankr. M.D.Tenn. 2007). In <u>In re Billington</u>, the annuities at issue listed the debtor's non-dependent mother as the primary beneficiary, with the debtor's son named as a

contingent beneficiary. Id. at 240. The Bankruptcy Court did not hold that the exemption extended beyond the class specifically enumerated in the statute, but instead found that because the son was named as a contingent beneficiary and "given the statute's broad aim of protecting the debtor's close family and dependents," the annuities were exempt. Id. at 241. The Bankruptcy Court gave special consideration to the legislature's intention to protect a "class of beneficiaries," and that since one member of the protected class was named as a possible beneficiary, the mother's status as a non-dependent did not exclude the annuity from being covered by the statute. Id. at 240-41 (citing In re Clemmer, 184 B.R. 935 (Bankr. E.D.Tenn. 1995).

In re Clemmer does not support Defendant's contention that this statute essentially exempts annuities in favor of any close relative. There, the two annuities at issue named the debtor's nondependent son as a beneficiary. 184 B.R. at 937. Two life insurance policies also insured the debtor's son and named the debtor as beneficiary. Id. The third life insurance policy named the debtor's non-dependent son and the debtor's non-dependent mother as beneficiaries, with the son to receive two-thirds of the proceeds and the mother the remaining one-third. Id. The Bankruptcy Court held that the annuities were exempt although the son named as a beneficiary was not a dependent. Id. at 939. The court also held that two thirds of the third life insurance policy was exempt because the son was the beneficiary to that extent; however the Bankruptcy Court held that the remaining third of the policy, to which the debtor's non-dependent mother was beneficiary, was not exempt. Id. Thus, contrary to Defendant's arguments, the Bankruptcy Court recognized that life insurance and annuity policies naming non-dependent relatives as beneficiaries were outside the scope of Tenn. Code Ann. § 56-7-203.

Defendant further asserts that the annuity is exempt under Florida law, citing F.S.A. § 222.14.3. As the annuity in question was applied for in Tennessee and purchased through a Tennessee company using the proceeds of a life insurance policy issued in Tennessee, the Court concludes that the Florida law does not apply here. Assuming F.S.A. § 222.30 applies, exempt property under that statute is subject to levy or execution by a judgment creditor, if the exemption arises from the debtor's conversion of non-exempt property. See In re Jennings, 332 B.R. 465 (Bankr. M.D. Fla. 2005). Defendant used insurance proceeds to purchase the annuity policy that are not exempt. Thus, this statute would not support Defendant's position even if Florida law applied here.

Finally, Defendant argues that the insurance proceeds with which she bought the annuity policy were also exempt under Tenn. Code Ann. § 56-7-203, citing Brooks v. Brooks, 1994 WL 71528 (Tenn. Ct. App. 1994). In Brooks, however, the decedent's creditor sought the proceeds of the decedent's life insurance policy. Id. at *2. Here, the judgment debt that Plaintiff seeks to collect is a debt of Defendant Marilyn Godwin, the beneficiary of the life insurance policy. This distinction has been consistently recognized. In In re Huffines, 57 B.R. 740 (M.D. Tenn. 1985), the District Court affirmed a decision of the Bankruptcy Court denying an exemption claimed by a debtor in the proceeds of a life insurance policy where the debtor was the beneficiary. The court there found that under Tenn. Code Ann. §§ 56-7-201 – 56-7-203, the exemption does not cover the proceeds of the insurance policy from the beneficiary's own creditors. See also In re Olien, 256 B.R. 280, 283 (Bankr. E.D. Tenn. 2000) (Tenn. Code Ann. § 56-7-203 does not exempt a life insurance policy on which the wife was the beneficiary from creditors of the wife); LaForest v. Roberts, 2010 WL 1223921 (E.D. Tenn. 2010) (proceeds of an annuity where the debtor was the named beneficiary were not exempt from claims by creditors of the beneficiary).

11

Here, the proceeds from Marilyn Godwin's husband's life insurance policy are subject to claims of her creditors and she cannot shield them from such claims by using them to purchase an asset which would otherwise be exempt under Florida law.

For the foregoing reasons, the Court concludes that Plaintiff properly seeks to attach the annuity policy in an effort to satisfy a portion of the judgment awarded in this action, and the annuity policy is not exempt under either Tennessee or Florida law. Therefore, Plaintiff's motion for attachment should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 15th day of November, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge